Mr. Kronenberg, you may proceed. Yes, you've just come right up to the podium there, sir. Thank you, Your Honor. Good afternoon. My name is Patrick Evan Kronenberg. I am the plaintiff, Representative Prose. Thank you for the opportunity for me to deliver this oral argument today before this court. This case was brought to you today to appeal the order made on 5-18-2023 by the 18th Judicial Circuit Court of DuPage County. Judge Robert G. Gibson presiding, granting defendant's motion for summary judgment. The nature of this case is to show the trial court and the plaintiff's filed amended complaint with attached exhibits. There was clear liability incurred to the plaintiff's property. The tree limb causing the damage is located on the property in downtown Naperville, owned by defendant, Foxland Properties, Inc., according to local records. Plaintiff's personal property was legally parked at this location overnight via a single-family residential lease, executed August 2019 with the management partner. The plaintiff, up until this point, has been held solely responsible for that loss that occurred from the incident. In the filed docketing statement with this appellate court on 7-5-2023, as a plaintiff, I stated two issues proposed to be raised on appeal as a pro se litigant. Allow me to proceed. The first issue I raised was a biased judgment or attitude, if you will, against myself as a pro se litigant by the Honorable Robert G. Gibson of the 18th Judicial Court while proceeding over this case at the 18th location. I have provided this appellate court, as part of my filed appendix, Section 4 reported proceedings, sum of transcripts Judge Gibson proceeded over this civil complaint. The second issue I raised, relating to Issue 1 above my third argument in the appellant's brief, a key plaintiff's written evidence of pre-existing tree condition found, Exhibit G, in my amended complaint filed in court, was not heard in trial court by the tree yarders, a subject matter expert. Information found on a scheduled property inspection visit to the property, 660 North Eagle Street, on 12-4-2019, a week from the incident, were alarming to plaintiff and plaintiff's family, categorizing this tree as pre-existing damage at the base of the tree and incident. These findings were documented with a copy attempted to be given in person during a meeting at the property on 12-7-2019 to a representative of Foxland Properties, Bill Bumgarner, a managing partner of Sudbury Investments. At the time, plaintiff was under the impression this person was directly responsible for the said property, tree. There was no action taken by Mr. Bumgarner and or Foxland Properties, Inc. on this day or any day following. On 3-6-2023, arborist Dee Bruckner was summoned a subpoena to appear in court for a trial in front of the people of Illinois as a key piece to plaintiff's case of negligence by the defendant. By Judge Robert G. Gibson hastily striking the trial date scheduled a week prior at a pre-trial conference on 3-27-2023, plaintiff was deprived of his ability to present this case in front of the people of Illinois. This is argument one of the appellant's brief. Contained in the appellant's brief in the Statement of Facts, diligent time was spent by plaintiff laying out to the appellant court how the case moved steadily through the trial court system of the 18th Judicial Court. There were three trial court judges on the case preceding Judge Robert G. Gibson. Not one of these judges prior gave the plaintiff the swift treatment in court as shown by Judge Gibson. Plaintiff did not file an appeal as a personal vendetta with Judge Gibson or any other member. Rather, plaintiffs appealed to the appellate court in an attempt to seek financial relief. Questions presiding judge findings of responsibility directed on the plaintiff and the plaintiff's family. Plaintiff argued to ask a single family tenant renting a dwelling in a selected school district short term to foresee a problem with defendant's property not documented on any agreed paperwork falls outside the scope of realistic control of an individual prior to an executed agreement and in the months following. Three, as a temporary resident, one season of weather. Plaintiff's actions leading up to the incident on 11-27-2019 were not negligent, as Defendant's Counsel states, rather an act of omission based on lack of knowledge, expertise, and understanding the property's dangerous conditions. I had one excerpt from a book I wanted to share if possible. Maybe over a screen or something. I only have one copy. This is a page from a book in the law library at the DuPage County Courthouse that I stumbled upon. Is this out of a case, sir? No. What is the source of this? It's Leases and Rental Agreements by Marsha Stewart and Attorney Janet Portman, 13th edition. It's a law library book. Okay, so it's a statement on the law of leasing. Ten elements of a good maintenance and repair system for a landlord. Have you shared that statement with opposing counsel? I believe not. Okay, well, that's a little bit of a difficulty because your argument is supposed to be based on your brief. Was that contained in your brief? No, actually, while I was waiting. Oh, you just obtained it? Not today, at the trial court. Okay, well, the proper protocol, just I'll generalize it, is to give opposing counsel the opportunity to examine what you're going to present. You know, an oral argument. They've had the opportunity to read the brief and formulate their response to your arguments, and you as well have had that opportunity. And so, if it hasn't been shared, it would be a little difficult, perhaps unfair, so to speak, to have opposing counsel respond to that, if that's using to state a law that this court should follow in support of your argument. I understand. Of course, opposing counsel could waive that if opposing counsel wanted to, but otherwise, you could motion in stanter presently to have that made part of the supplement to your brief. Any comments from the bench regarding that procedure? We could ask opposing counsel if there's any objection. Yes. I'm just not sure what the source is. I don't know if this is an attorney who wrote the book. It doesn't sound like it's the case. I don't know if it's a treatise. And respectfully, I don't think anything in that sounds like it addresses the issues that he raised in his briefs about discovery borders that should not penetrate. So that's my only concern. That's your concern, but do you object to having it presented in stanter? I don't think counsel's seen it yet, though. Well, yes. I haven't seen it, Your Honor, so unfortunately, I don't even know. Okay. And I don't know which issue he's citing that. So you're not willing to take it sight unseen. Unfortunately, I can't, Your Honor. Okay. That is a difficulty. So if you would like to file it, allow opposing counsel to respond, not now, but you could certainly do that. I don't think it's that important. It was more of a general practice I think the landlord would follow. Okay. And then I think you can readily find it online or in a maybe common sense scenario. And this was just a way of not being my words. I can use my time to kind of paraphrase my thoughts. Okay. And not use the document if that's okay. Okay. I think that would be acceptable. Yes. Common sense arguments are always welcome. Okay. As long as they're from you and you're not using them as authority. Okay. Any objections from the bench? No. So, yes. As a general rule, landlords are legally required to offer livable premises when a tenant originally rents an apartment or rental unit and to maintain the premises throughout the rental term. And if you employ a manager or management company, make sure they fully accept and implement your guidelines. Follow these steps as a landlord to provide maintenance and repair problems with tenants. Regularly look for dangerous conditions on the property and fix them promptly. Clearly set out the tenant's responsibilities for repair and maintenance in your lease or rental agreement. Encourage tenants to immediately report issues. Once a year, inspect all rental units for safety and maintenance problems. And get a good liability insurance policy to cover injuries or losses suffered by others as a result of defective conditions on the property and lawyer's bills for defending personal injury. My question is would plaintiff's loss have been prevented with reasonable performance by the defendant and the defendant's representatives? The release sought from the appellate court here today is to vacate the trial court's judgments made by the trial court judge, Robert G. Gibson, and send the case back to the trial court for a new hearing on the order-setting jury trial entered on May 3, 2022, by trial court judge, Robert E. Douglas. Thank you for the opportunity to address this, Corbyn. Questions from Karen? Yes, Mr. Carver. Can you tell me, tell us, what you believe it is that the trial judge did wrong? Other than you allege that he was biased, what do you believe he did wrong? I believe with the transcripts I provided as well, he was, this particular trial court judge was not, had a full understanding of the whole case history. It's pretty detailed, quite a bit of pages. And based off of comments, or statements I've made, there wasn't a full understanding of the case in whole. Rather, what was at his present desk, like this motion to compel. I think he made a really hard decision striking the trial, yet I don't think he had the full scope of the case history, you know, as it progressed with these other three trial court judges. Mr. Carver, you argued that you were not negligent because you were not in a position to know that these trees may fall in strong winds, is that correct? That's correct. So, what evidence do you have that the other party, the defendant, was in a position to know that? I personally don't have evidence, however, the defendant has not had to provide this court, other than answers to interrogatories that I've filed on behalf of myself, to the defendant, that clearly stated he had no property inspection records done at this residence. They had just purchased the residence, I think within a year since we rented. So they were new to the property? They were new to the property, so it wasn't grandfathered in. This was all part of my argument, but I think on March 27, 2023, I was arguing with the trial court judge rather than the people of Illinois. As it related to your arborist, what was the arborist going to testify to, that the trees were a danger? He was going to back up his report, Exhibit G, verbally. Unfortunately, that hampered me at the arbitration hearing. He wasn't present. This was a property inspection, not a quote. It turned into a quote, and it was done within a week after the incident, not prior, and I shared it with the respective parties. And do you realize, or did you realize at that time, that you had an obligation to disclose that person as a witness, the arborist as a witness, so they could see what the arborist was going to testify to? They questioned him during discovery as part of the deposition, and then also I served a subpoena with copying them on it March 6, 2023. So you're saying that the arborist was... I'm sorry. The arborist was deposed in this case? What do you mean by deposed, sir? They put him under oath and asked him questions. No, he didn't plan to be at the trial court. The only thing we have this case has from the arborist is Exhibit G, his summary of what he encountered. The witness statement for the person that was there, Brittany Humphrey, she's not here today, my spouse. She submitted a statement of witness, which was on record. But she was going to testify to what the arborist told her? Correct, yes. I had those two witnesses and one of the management company's partners, and they all got subpoenaed, and the plan was to testify at trial. Thank you. Was the arborist testifying as to what happened or what his opinion was? It would be what his opinion was of the tree as it sat there that day. Okay, thank you. Nothing further, Judge. Thank you, sir. You will have time in reply. Thank you. Counsel, you may respond. May it please the Court. My name is Laura Moll. I'm appearing on behalf of the defendant, Appali Foxland Properties. There were a number of issues that Mr. Kronenberg did not address that were in his brief. Clearly, he indicated today that he was appealing from the motion for summary judgment. However, if you look at the very first paragraph of his reply brief, he indicates he is not disputing the summary judgment. He didn't provide a transcript from the hearing on the summary judgment, and he did not provide any additional case law or facts that would in any way allow this court to determine that perhaps summary judgment was not proper at the time. Based on that, it is our position that he has waived and or forfeited any right to argue that the entry of the summary judgment was improper. Having said that, he did raise some other issues as it related to motions and as it related to Judge Gibson's conduct. This case is not as voluminous as Mr. Kronenberg would like you to believe. Really, there were pleadings, and there was written discovery, and there was an arbitration. There were no depositions taken. And so it's a very easy read, quite honestly. But the judge did understand the issues, and he gave Mr. Kronenberg the opportunity to present to him some sort of evidence that he felt was sufficient to proceed with a jury trial. Judge Gibson has the discretion to handle his own docket. The case law is very clear to manage his discovery and to manage his docket. And quite honestly, he chastised me for not bringing the summary judgment earlier, and so I think equally he treated us as it related to the trial. He also didn't preclude a trial in this case. What he did is he struck the trial date. He ordered the parties to file motions. Motions for what? Motions for summary judgment. Yes, Your Honor, I'm sorry. And he indicated that he was going to hang on to the documents because this very likely, if the summary judgments weren't granted, we were going to go forward with a trial. I think that's well within his discretion, and I don't think anything about the rulings that he made as it related to striking the trial date in any way prejudiced Mr. Kronenberg. He's mentioned this expert. This expert has never been properly disclosed. There is an estimate that he has submitted. The only language in the estimate that Mr. Bruckner indicated was it was a high-risk silver maple tree due to decay on one side. There's never been a disclosure as to what caused that, how long it had been there, and whether or not this condition actually caused any tree branches to fall on the day that Mr. Kronenberg's vehicles were damaged. He never produced any information, the basis of the opinions, any qualifications, no proper disclosures under Supreme Court Rule 90D or Supreme Court Rule 213F3. At the summary judgment stage, he had an opportunity to get an affidavit, if he wanted, from Mr. Bruckner. There may have been an objection because he hadn't been disclosed, but he still had an opportunity, if he thought that he had some opinions, that would raise a question of fact to attach to a summary judgment response, which he did not do. There were also some, he didn't discuss the other issues that he raised in his brief. I don't know if the court wants me to address them. He was challenging some discovery orders that were entered a couple weeks before the trial, namely a subpoena for documents that dealt with insurance and a subpoena for testimony as it also related to insurance. The court, I think rightfully, under the Supreme Court rules and within his discretion, denied his motion to compel and quash the subpoena as untimely and as issues that would not be admissible at trial. How was it untimely, counsel? Well, Your Honor, the Supreme Court rules provide, first of all, that all discovery needs to be completed 60 days prior to trial. The plaintiff did not ask leave of court to issue any of those, to issue a subpoena. He was trying to compel something that had never been asked for before. When discovery was initially done, only interrogatories were issued to my client. There were no requests to produce. There were no subpoenas that were issued earlier that were not complied with. In fact, there were no subpoenas issued, period. So I think it was within his discretion and following the Supreme Court rules as it relates to the time that discovery is to be completed before trial that those rulings were properly made by Judge Gibson. Counsel, do you recall what the request was for? You had it quashed, the subpoena. The original subpoena, he was asking for documents. So this property, the defendant in this case is Foxland Properties. They own the property. Sudbury Investments was the property manager. They are not a party. He issued a subpoena to Sudbury, and he was requesting information for documents between Sudbury and Pekin Insurance and their insurance agent. So those were the documents. It was very broad, but those were the documents he was requesting. Could it seem that the judge summarily accepted your argument that insurance is not relevant, even though there could have been information leading to a relevant and admissible evidence? I don't know what the documents were. I would imagine that the majority of the documents, if not all, may be privileged, to the extent that Sudbury Investments even had any documents from the insurance company. This was kind of an ongoing issue with some confusion as to who the insurance agent was. I don't understand the confusion because I answered in my interrogatories who Mr. Carroll was. He was their insurance agent. But, again, there wasn't an, you know, the issue of insurance is irrelevant. Well, the issue of insurance is irrelevant. It's not going to come to the trial. But what if an adjuster went out there and had made a report which could have been relevant to the trial? I suppose it's a possibility, but it's not a request that had been made sooner than two weeks before the trial started. I'm not asking about the time. Right. Just the potential for discovery. Yes, Your Honor. There could have been, I suppose, something potentially in there, maybe a photograph, maybe something that was discoverable. Whether or not it would be admissible at trial is really unknown. What did you understand, if you can state it, is the theory of liability under any circumstance for your client? Well, I think there's a premises liability. He could state a cause of action for premises liability. And that was one of the issues that was argued at the summary judgment of whether or not my client had notice of the condition of the tree. Mr. Kronenberg admitted to Judge Gibson, and you can see it in the transcripts, that he never contacted my client to indicate there was a problem with the tree or that there were any branches falling or anything was wrong with the property. And without any notice, you know, my client simply was not aware that there was a problem. If there is a problem, there's also the issue, Your Honor, that there was a horrible windstorm that came through that area. And so, you know, there was an act of God, affirmative defense, but we don't know if this was simply because there was this windstorm that came through the area at the time of the incident. Well, what role does the lease play at all in terms of taking the responsibility from the property owner to the tenant? Well, I mean, I believe if you read the lease, we are not in any way indicating that we would not be liable. There is a provision in there that imposes some duties on the tenant. This is a single-family home that he had sole possession of, and there are some duties in the lease imposed on him as it related to landscaping and maintenance, yes. And so I think because he's going to have a regular presence on there, my client was trying to, in that lease, trying to indicate we would appreciate, you know, if you see something, let us know. And because you're there, you live there, you have sole possession of this property. Does the lease require notice from the tenant to the landlord as to a problem with any of the landscaping? I don't believe that it says that, no, Your Honor. I don't believe it specifically speaks to notice as it relates to the landscaping. Counselor, you're not arguing that he had a responsibility to call a tree trimming service and fix the tree beforehand, simply that if he noticed it that he had an obligation to tell you about it? Well, I think he had two options. One, it imposes on him the duty to maintain all of the landscaping, so I think if he wanted to, he had the option to, you know, hire someone to trim trees or cut grass or cut back branches, whatever he wanted to do. If he felt that wasn't his responsibility, you know, he certainly had the right to contact the property management company or the owner and inform them that there was an issue that he felt was their responsibility to address. And there was never an issue raised during this tenancy there as it related to this tree or any landscaping issues on the property. Thank you. And you don't know from the arborist if this is a noticeable condition? That's correct, Your Honor. We also don't know whether or not this condition is anything that actually caused or contributed to the branches falling. Unfortunately, that was never disclosed, so we don't have that information. When was the first time you received any notice about this arborist? When he filed his complaint, initially filed his complaint, he had attached as an exhibit an estimate. He mentioned Exhibit G. It was an estimate that Mr. Cronenberg had called this arborist out after the incident occurred to look at the tree as it relates to cutting it down or what needed to be done with it. And the complaint was filed when? Back in 2020. Thank you. I don't have the exact date, I'm sorry, Your Honor. So your construction is that the arborist's contact was to fulfill the maintenance obligation under the lease? Well, I think that is an argument, although it was done after the incident. So I don't know what... Well, yeah, but you just said the estimate was for cleanup. That's correct. And that was Mr. Cronenberg contacted the arborist to come out. That's what I said. Yes. Yes. Okay. And there's nothing here to suggest that it was an obvious defective tree. It's not, and the plaintiff has submitted photos. There are both black and white and color photos that are part of the record, which purportedly, I guess, show the area. We did get them from Mr. Bruckner. I believe they were photos that Mr. Cronenberg took that show what he perceived to be the condition of the tree after this incident occurred. And in the quote from the arborist, it used the words, at risk, silver maple? Yes, that was a direct quote, Your Honor. He said that it was a high-risk silver maple tree, the high risk due to decay on one side of the tree trunk. Thank you. So in closing, I would respectfully ask that this court, especially in light of the fact that their plaintiff seemingly is not contesting the entry of a summary judgment, that the lower court ruling of summary judgment in favor of the defendant be affirmed. Thank you. Thank you. Mr. Cronenberg, am I pronouncing that correctly? Yes, Cronenberg. Cronenberg. You may reply. Thank you. In my appendix that I filed with the court, appellate court, I think the statement one was the appeal, the court order that I'm appealing, and it was the May 13th, 2023 order, that motion for summary judgment. This motion for summary judgment, this case was filed February 2020. It withstood a motion to dismiss by the defendant. It withstood a motion for summary judgment by the plaintiff, and then it went into the discovery process. That's your motion, though, Mr. Cronenberg? Yeah, I did the motion for summary judgment. The defendant did the motion to dismiss. Right, but your motion for summary judgment was denied, apparently. Correct. Okay. Yeah. We went into the discovery process. It, you know, took some time. You know, she pointed out, the defendant's counsel pointed out one key. The trial court judge on 327 insisted to her twice that this should be motion for summary judgment against, you know, telling her how to do it. This goes into this biased judgment of, like, coming down on me in a way. That's the presence that I had or I felt on that day. For this motion to quash, I wasn't present. I was working. It was considered a status hearing. I still submitted my response the night before, but it wasn't filed until after this date. But at that hearing, I wasn't present. The transcripts show that. This was his first time on the stand as well. He made a, he squashed it, or he accepted the, yeah. I read that. Why weren't you there? I was at work. When I called the court, they said it was a status. It's not need to be there. We have your reply. Well, this is just a clerk with the court, and then there'll be another hearing set up. But since he had it on his desk, apparently he ruled on it with me not being there. And this was his first time on the case. You had notice of the court date, though, correct? Yes, yes. I was aware of it. It was previously scheduled for status? Yep. Why did you think that you didn't need to be there? Well, I submitted, I think I submitted to quit. I submitted my reply to their motion to quash the night prior to that court date. And that must have got to his desk. However, I didn't have to do it prior to that status. I could have done that after. But since I'd done it prior, I continued on with work the next morning after a phone call with the clerk, you know, at 8 in the morning or whatever. And then I was surprised to see that the motion was quashed when I got an email message from the defendant's counsel. And then, you know, of course, the next step at the next court when I had a motion to compel, that was my first time meeting Honorable Judge Gibson. Mr. Kronenberg, do you know what it is that you have to prove to prevail in this case, the elements that you have to prove? Yes, I have to show. What do you believe them to be? I got to, part of my, yes, I believe I have to show that they could have interfered in a way that wouldn't have put me in harm's way or my family in harm's way. Luckily, it was just my personal property. It wasn't myself. I was put in a dangerous situation. The paperwork, the residential lease, nothing would have me look for a condition as such. Exhibit G that I filed showed that. It sounds like you believe that they had a duty. Yes, duty of care. And where do you get that from? What part of the law? What do you cite that tells us that they had a duty to inspect that tree? Research. I don't have that in front of me, although I did state a law, IL-765, being exempt from all liability. That's not contractually allowed in the state of Illinois. As far as duty of care, breach of contract, establishing causation, negligence, I'm aware of all this, but I don't have the terminology in front of me. Sure. I apologize. One question, please. Sir? Yes. On that date that you were not in court and they had noticed up their motion to quash and you filed your response, you weren't there and the court entered an order. Was that the time when Judge Gibson made the comment about this should be a summary judgment motion? No. Okay. And was that on a later date or an earlier date? A later. Okay. And the trial date was set for when? April 3rd, 2023. And that April date was in place at the time that the status hearing had been set for the March date? Correct. On May 2022. Okay. Thank you. No further questions. Thank you, Mr. Cronenberg. Thank you. Counsel Moll, excuse me. This matter will be taken under advisement. A written disposition shall issue.